**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

GREGORY WOODS.

NO. 3:CR-06-063

No. 3:CV-10-2492

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Gregory Woods' ("Woods") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. 367.) Woods claims that he was deprived of the effective assistance of counsel during the course of his criminal prosecution which culminated in his plea of guilty to the charge of possession with intent to distribute cocaine base (crack) and cocaine. Specifically, Woods contends that his counsel was ineffective by: (1) failing to seek dismissal of the indictment based on speedy trial concerns and defects in the grand jury's findings as to "the identity of the controlled substance"; (2) failing to inform Woods that he had a constitutional right to have a jury decide the identify of the controlled substance beyond a reasonable doubt; (3) failing to object to the defective plea colloquy; and (4) failing to conduct an investigation or interview witnesses to aid Woods' defense. Because the record demonstrates that Woods was not deprived of the effective assistance of counsel and that he is not entitled to the relief requested, the motion will be denied without a hearing.

**I. Background**

On February 14, 2006, a federal grand jury returned an indictment charging Gregory Woods and four other individuals with conspiracy to distribute and possess with intent to distribute more than fifty grams of cocaine base and more than five hundred grams of cocaine in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A). The grand jury also charged Woods in Count 11 of the indictment with

"knowingly, intentionally and unlawfully possessing with intent to distribute more than 5 grams of cocaine base (crack), a Schedule II narcotic controlled substance" in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B). Count 12 of the indictment charged that Woods "did knowingly, intentionally and unlawfully possess with intent to distribute more than 50 grams of cocaine base (crack) and additional quantities of cocaine, Schedule II narcotic controlled substances" in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

On March 1, 2006, Woods appeared before a United States Magistrate Judge for arraignment on the charges, at which he entered a plea of not guilty. Woods was ordered detained pending trial.

On August 21, 2006, pursuant to 21 U.S.C. § 851(a), the Government filed an Information Establishing Prior Convictions indicating that Woods had previously been convicted of three drug trafficking offenses. (Doc. 99.) As a result, Woods faced an enhanced penalty of a mandatory term of life in prison on Count 1 and Count 12 of the indictment. (*Id*.)

Although the case was first scheduled for trial on May 3, 2006, trial in the matter was continued on numerous occasions based on continuance motions filed by Woods, Woods' co-defendants, and/or the Government and the defendants jointly. Trial was also delayed in June 2008 following the motion by Woods' counsel to withdraw from the case and to allow for substitution of Paul Ackourey as counsel.

Thereafter, over the next several months, counsel for the Government and Mr. Ackourey negotiated the terms of a potential plea agreement. (Doc. 322, 55.) Ultimately, the parties reached a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), whereby Woods would receive a sentence of 144 months in prison. (Doc. 260.)

On January 22, 2009, Woods appeared in court for a change of plea hearing. Pursuant to a written plea agreement, Woods entered a plea of guilty to Count 12 of the indictment, the charge of possession with intent to distribute cocaine base (crack) and cocaine. The plea agreement provided that Woods would plead guilty to an unspecified quantity of cocaine base and cocaine in order to avoid the mandatory minimum. At the change of plea proceedings, the Court conducted a guilty plea colloquy, during which Woods was advised of his trial rights and informed that he was surrendering those rights by pleading guilty. (Doc. 285, 24-26.) Woods, while under oath, indicated that he understood those rights and that he was giving up those rights by entering a guilty plea. (*Id*.) Woods was also informed of the elements of the offense which he was pleading guilty to, and he admitted that he was guilty of each of those elements. (*Id*.) Woods was found fully competent and capable of entering an informed guilty plea, that he was aware of nature of the charges and the consequences, and that the guilty plea was knowing, voluntary, and supported by an independent basis and fact containing the essential elements of the offense. (*Id*. at 30.) Accordingly, the Court accepted the guilty plea on the offense contained in Count 12 of the indictment. (*Id*.)

On February 20, 2009, Mr. Ackourey filed a motion to withdraw as counsel, (Doc. 269), which was granted by the Court. (Doc. 279.) Then, following the appointment of new counsel, Woods filed a motion to withdraw his guilty plea. (Doc. 283.) The motion to withdraw was denied because he failed to "offer[ ] substantial reasons to withdraw his plea." (Doc. 303.) Woods appealed the denial of his motion to withdraw, but the Third Circuit affirmed. *See United States v. Woods*, 415 F. App'x 371 (3d Cir. 2010). Ultimately, the 11(c)(1)(C) plea agreement was accepted, and Woods was sentenced to 144 months in prison.

On December 6, 2010, Woods filed a motion to vacate under § 2255. (Doc. 354.)

Woods was thereafter informed of the limitations on his ability to file a second or successive petitions. (Doc. 366.) Woods, on June 6, 2011, availed himself of his right to withdraw his § 2255 motion and filed an all-inclusive § 2255 motion. (Doc. 367.) The Government filed its response to Woods' motion on March 23, 2012, (Doc. 390), and Woods' reply brief was filed on April 6, 2012. (Doc. 391.) Now, as Woods' motion is fully briefed, it is ripe for disposition.

## II. Legal Standard

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

Section 2255(b) generally entitles a petitioner to a hearing on their motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b). The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. *See Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the Court must decide

4

whether the petitioner's claims, if proven, would entitle petitioner to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Gov't of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d. Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *see also Forte*, 865 F.2d at 62.

### III. Discussion

Woods' § 2255 motion is predicated on the alleged ineffective assistance provided by his counsel during the course of his criminal prosecution. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001.) Proving a deficiency in conduct "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." *Id*. (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id*.

"Because of the difficulties inherent in making the evaluation, a court must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. It is well-settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id*. at 687, 104 S. Ct. 2052. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id*. at 693, 104 S. Ct. 2052. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. 2052. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id*. Effectiveness of counsel applies to advice given by counsel during guilty plea discussions. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

### 1. Lack of a Speedy Trial

First, Woods contends that his counsel was ineffective for failing to seek dismissal of his indictment based on a violation of the Speedy Trial Act of 1974 and under the principles of *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).[1] The

---

[1]    In his opening submission, Woods claimed his counsel was ineffective for failing to move for dismissal of the indictment under the Speedy Trial Act. As a result, the Government's opposition brief focused largely on the fact that there was no Speedy Trial Act violation in its prosecution of Woods. Woods' reply brief,

Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . . " U.S. Const. amend. VI.  The Sixth Amendment right to a speedy trial is designed to protect an individual from the deprivation of his personal liberty from the time he is arrested or criminally charged through to sentencing. *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007).

### a.   Speedy Trial Act

Congress enacted the Speedy Trial Act to give effect to the Sixth Amendment right to a speedy trial by setting specified time limits after arraignment or indictment within which criminal trials must be commenced. *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988).  The Act provides that in "any case in which a plea of not guilty is entered, the trial . . . shall commence within seventy days" from the last date of: (1) the "filing date" of the information or indictment or (2) the defendant's initial appearance before a judicial officer (*i.e.*, the arraignment). 18 U.S.C. § 3161(c)(1).  If the seventy days are exceeded, the "indictment shall be dismissed on motion by the defendant." 18 U.S.C. § 3162(a)(2).  Such dismissal may be with or without prejudice at the court's discretion. *Id*.

The Act permits a court to grant continuances if doing so would serve the "ends of justice." 18 U.S.C. § 3161(h)(7).  The periods of time covered by such continuances are excluded from the calculation of the seventy-day window. 18 U.S.C. § 3161(h)(7)(A).  The district court's reasoning for granting a continuance must be set forth "in the record of the case, either orally or in writing." *Id*.  These on-the-record findings must indicate that the district court weighed the need for a continuance against the countervailing public interest

---

however, argues ineffective assistance of counsel based on a constitutional violation of the Speedy Trial Clause under the principles of the Supreme Court's decision in *Barker*.  As Woods is proceeding on this motion *pro se*, both claims will be addressed.

in a speedy trial. *See Zedner v. United States*, 547 U.S. 489, 506-507, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006)

A court may consider a number of factors in determining whether an "ends of justice" continuance is appropriate. The statute itself notes that one such factor is "whether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). The same sub-paragraph notes that a court should also consider whether failure to grant a continuance might "deny the defendant . . . continuity of counsel." *Id*. An additional factor in determining whether a continuance is appropriate is "whether the case is so unusual or complex, due to the number of defendants, the nature of prosecution, . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." *Id*. at § 3161(h)(7)(B)(ii).

Initially, any substantive claim for a violation of the Speedy Trial Act was waived as a result of Woods' failure to seek dismissal prior to the entry of his guilty plea. *Id*. at § 3162(a)(2).[2] In any event, Woods' Speedy Trial Act claim is not supported by the record. In seeking continuances in this case, Woods' counsel cited the need for additional time to prepare for trial as a result of the ongoing and extensive discovery relevant to the case, which included "numerous wiretapped conversations" and "various searches of property utilized in the storage and distribution of controlled substances." (Doc. 255.) Woods'

---

[2]     Section 3162 provides that the "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2); *see, e.g., United States v. Coleman*, No. 05-295, 2012 WL 1231800, at *3 n.6 (E.D. Pa. Apr. 21, 2012) (where the petitioner failed to move for speedy trial dismissal prior to trial, he was barred from raising the claim substantively and the court analyzed the "purported speedy trial claim solely for the purpose of determining whether his ineffective assistance of counsel claim has merit.").

counsel's request for continuances in these circumstances was reasonable as "[i]t is within counsel's purview to determine whether a continuance is in the best interest of his client." *United States v. Young*, No. 05-056, 2011 WL 4056729, at *6 (E.D. Pa. Sept. 12, 2011). Likewise, the Government and Woods jointly moved for multiple continuances based on the complexity of the case and to allow the parties additional time to resolve the criminal charges. The ends of justice served by granting the continuance motions outweighed the best interest of the public and Woods in a speedy trial. In addition, Woods' co-defendants requested continuances on multiple occasions, which also served to toll the speedy trial clock as to Woods. *See, e.g., United States v. Mensah-Yawson*, 459 F. App'x 606, 609 (3d Cir. 2012) ("after defendants are joined for trial, an exclusion applicable to one defendant applies to all codefendants.").

Based on a review of the docket, no violation of the Speedy Trial Act occurred in this case. Rather, the continuances in this action complied with the requirements of the Speedy Trial Act. Specifically, the "ends of justice" Orders noted that continuance outweighed the best interests of the public and Woods in a speedy trial and that the periods of delay resulting from the continuances were excludable pursuant to the Speedy Trial Act. Thus, as there was no Speedy Trial Act violation, the claim that counsel was ineffective for failing to file a meritless motion to dismiss the indictment must fail. *See Young*, 2011 WL 4056729, at *7; *see also United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### b.      Sixth Amendment Speedy Trial Clause Violation under *Barker*

As noted, Woods in his reply brief argues that his counsel was ineffective for not filing a motion to dismiss the indictment based on an alleged speedy trial violation pursuant to the principles of *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

9

In *Barker*, the Supreme Court established a balancing test to determine whether an accused's Sixth Amendment speedy trial rights have been violated. *See id*. at 530, 92 S. Ct. 218. The factors a court must weigh are the "length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*.

### i. Length of Delay

The first inquiry under the *Barker* test is the length of the delay. This, according to the Third Circuit, entails a two-part inquiry. *See United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009). "'The delay involved first figures into the speedy trial equation for the purpose of determining whether it is long enough to trigger inquiry into the other *Barker* factors.'" *Id*. (quoting *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993)).

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness.

*Doggett v. United States*, 505 U.S. 647, 651-652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The Third Circuit has held that a delay of fourteen months is sufficient to trigger review of the remaining *Barker* factors. *See Hakeem*, 990 F.2d at 760; *see also Battis*, 589 F.3d at 679 (forty-five month delay between indictment and start of trial was sufficiently long to require consideration of the remaining *Barker* factors). As approximately three years went by between Woods' indictment and guilty plea, this is sufficiently long so as to require consideration of the other *Barker* factors. *See, e.g., United States v. Howard*, 443 F. App'x 596, 599 (2d Cir. 2011) (forty-three month delay between arrest and guilty plea triggered constitutional analysis with respect to other *Barker* factors); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (twenty-five month delay between arrest and guilty plea was uncommonly long and required consideration of remaining *Barker* factors). Such delay does not necessarily indicate that prejudice exists; however, it requires Wood's claim be

evaluated in light of the remaining *Barker* factors. *Doggett*, 505 U.S. at 652 n. 1, 112 S. Ct. 2686.

ii.    **Reason for Delay**

The second *Barker* factor is the reason for delay. *Barker* grouped possible reasons for delay into three categories. *See Battis*, 589 F.3d at 679. A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs strongly against the Government. *Id*. (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. 2182). A "more neutral reason such as negligence or overcrowded courts" weighs against the Government, albeit "less heavily." *Id*. (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. 2182). Conversely, "'delay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.'" *Id*. at 679-80 (quoting *Vermont v. Brillon*, --- U.S. ----, 129 S. Ct. 1283, 1290-91, 173 L. Ed. 2d 231 (2009)).

In this case, the reason for delay factor weighs against finding Woods' counsel ineffective for failing to raise a Sixth Amendment speedy trial claim. Here, a number of the continuances granted in the prosecution of Woods were filed either by his counsel or by the Government and his counsel jointly. The continuances filed by the Government and the defendants jointly were granted for reasons such as the complexity of the case and to allow the parties additional time to resolve the charges against the defendants. It was certainly reasonable for Woods' counsel to agree to continuances to allow further time for the parties to attempt to reach a plea agreement. Additionally, a number of continuances were sought solely by Woods' counsel as he was in "need of more time to prepare for said trial." (Docs. 236; 247; 249; 251; 255.) Essentially, continuances were ordered because they outweighed the best interests of the public and the defendants in a speedy trial. Because defense counsel's readiness for trial was of paramount importance, especially in light of the severe penalties Woods faced if convicted of Counts 1 and 12 of the indictment, counsel's requests

for "ends of justice" continuances were reasonable. *See, e.g., Young*, 2011 WL 4056729, at *8 ("It was reasonable to conclude that this case required significant preparation by counsel to represent effectively any defendant who proceeded to trial. The charges in this case were serious and carried significant penalties. It was crucial that the defendants had adequate time to prepare a proper defense."). Clearly, the "reasons for the delay" weigh against Woods' speedy trial claim.

### iii. Accused's Assertion of Speedy Trial Rights

The third *Barker* factor requires consideration of whether the defendant has asserted his right to a speedy trial. "Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531, 92 S. Ct. 2182. While such failure "does not mean that he cannot claim that his right to a speedy trial was violated," it will be weighed against Woods. *United States v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009). In this case, Woods has not identified any motion raising speedy trial concerns. And, while the Court is aware of at least one communication by Woods to his counsel that he did not want his trial delayed, (Doc. 183, stating to counsel that "I want to move forward with trial and please do not postpone the trial"), "informal correspondence" to the court by a represented defendant is less convincing that the right to a speedy trial has been asserted. *See Hakeem*, 990 F.2d at 766. In addition, even if Woods had tried to assert his right to a speedy trial, his counsel's requests for continuances indicate that Woods was not ready to go to trial. *See id*. at 764 ("Repeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial."); *see also Battis*, 589 F.3d at 681 (when a defendant requests a speedy trial, but "through contrary actions . . . evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight."). Here, as there is little evidence that Woods asserted his right to a speedy trial, this factor does not weigh in favor of finding

12

a speedy trial violation.

### iv.     Prejudice to the Accused

The final *Barker* factor, prejudice to the accused as a result of the delay, requires consideration of the following interests: (1) preventing oppressive pre-trial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired by dimming memories and the loss of exculpatory evidence. *Barker*, 407 U.S. at 532, 92 S. Ct. 2182.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Id*.  "With respect to all its various types, the burden of showing prejudice lies with the individual claiming the violation. . ." *Hakeem*, 990 F.2d at 760.  However, "'consideration of prejudice is not limited to the specifically demonstrable,'" and thus a defendant may "claim prejudice without providing 'affirmative proof of particularized prejudice.'" *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. at 655-56, 112 S. Ct. 2686).

Here, Woods has not established prejudice as a result of the delay.  Woods simply restates the relevant inquiries for prejudice without pointing to any oppressive incarceration, anxiety and concern, and/or impaired defense as a result of the delay.  Significantly, nothing in the record indicates that Woods' defense was impaired by the delay.  Similarly, Woods does not assert, nor does the record indicate, that he suffered prejudice as a result of "oppressive pretrial incarceration" or "unnecessary anxiety and concern."[3]   In these

---

[3]     The Court is aware that Woods claimed that he was not "sleeping that well" following the entry of his guilty plea on January 22, 2009. (Doc. 268.)  From the face of Woods' communication to his counsel, his anxiety or concern was a product his decision to enter a guilty plea and not a result of the delay in bringing his case to trial.  Moreover, "[v]ague allegations of anxiety are insufficient" to show prejudice; instead, a defendant "must produce evidence of psychic injury" and "show that his anxiety extended beyond that which 'is inevitable in a criminal case.'" *Hakeem*, 990 F.2d at 762 (quoting *United States v. Dreyer*, 533 F.2d 112, 115-16 (3d Cir. 1976)).

circumstances, the fourth factor weighs in favor of the Government.[4]

### v.     Balancing

To summarize, the approximate three-year delay in this case between indictment and Woods' guilty plea triggers a speedy trial inquiry under the *Barker* factors.   Nevertheless, on balance, the *Barker* factors do not demonstrate a violation of Woods' Sixth Amendment right to a speedy trial.   Rather, as a whole, the record demonstrates that the reasons for the delays were attributable to Woods, Woods' co-defendants, or to the defendants and the Government jointly, and that Woods was not prejudiced by the delay.   Likewise, there is little evidence to suggest that Woods asserted his speedy trial rights.   Thus, because Woods' Sixth Amendment speedy trial rights were not violated, the ineffective assistance of counsel claim fails because Woods' counsel was not ineffective for failing to file a meritless motion.

### 2.     Grand Jury Treatment of the Controlled Substance

Second, Woods claims that his counsel was ineffective for failing to move for the dismissal of the indictment "when the identity of the controlled substance had not been treated as an element of the offense found by the grand jury."   A review of the indictment, however, demonstrates that the claim is without merit.   Indeed, Count 1 charges Woods with conspiracy "to knowingly, intentionally and unlawfully distribute more than 50 grams of cocaine base (crack), more than 500 grams of cocaine, and more than 1 kilogram of marijuana," in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A). In Count 11 of the indictment, the grand jury charged Woods with "knowingly,

---

[4]     In *Battis*, the Third Circuit held that the defendant was presumptively prejudiced when "there is a forty-five-month delay in bringing a defendant to trial, even where it could be argued that only thirty-five months of that delay is attributable to the Government." *Battis*, 589 F.3d at 683.  Here, for the reasons discussed above, the majority of the delays in this case were not attributable solely to the Government, but were attributable to Woods, or Woods and the Government jointly.   Thus, any prejudice that can be presumed from the delay was "mitigated" by Woods' "acquiesc[ence] in the delay." *Id*.

intentionally and unlawfully possessing with intent to distribute more than 5 grams of cocaine base (crack), a Schedule II narcotic controlled substance" in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).  And, Count 12 of the indictment charged that Woods "did knowingly, intentionally and unlawfully possess with intent to distribute more than 50 grams of cocaine base (crack) and additional quantities of cocaine, Schedule II narcotic controlled substances" in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.  Clearly, the grand jury made specific finding as to the "identity of the controlled substances" in the indictment issued.

Alternatively, to the extent that Woods suggests in this claim for relief that a jury was required to determine aggravating factors that would have increased the statutory maximum penalty, such as the specific weight of controlled substances set forth in the indictment, Woods plead guilty to an "unspecified amount of cocaine base and cocaine" so as to reduce the statutory maximum penalty and to avoid the statutory mandatory minimum.  During his plea colloquy, Woods acknowledged that by pleading guilty he was waiving the right to have a jury make any findings as to his guilt or innocence.  Thus, Woods waived having a jury determine this issue and his claim of ineffective assistance of counsel on this point necessarily fails.

### 3. Identity of the Controlled Substance Beyond a Reasonable Doubt

Woods next asserts that his counsel never informed him that "he had a constitutional right to have a jury decide the identity of the controlled substance beyond a reasonable doubt."  Woods further contends that had he been properly informed, he would have taken his case to trial.  Woods' contentions are belied by the documents and evidence of record.

During the plea colloquy held on January 22, 2009, Woods was informed of his right to have the elements of the offense proven to a jury beyond a reasonable doubt:

15

You understand that you have a right to plead not guilty to the offenses charged against you, and in which case you'd have a right to a trial by jury in a courtroom such as this before 12 jurors. I would preside over that trial. At that trial you would be presumed to be innocent. And in order for you to be guilty the government would have to prove your guilt beyond a reasonable doubt.

. . .

Now, the offense to which you're pleading guilty to, the elements are as follows: That you possessed a controlled substance, in this case cocaine base, also known as crack. . . .

(Doc. 285, 24-25.)

Following the entry of his guilty plea, Woods sought to withdraw his plea. This Court denied Woods' motion, (Doc. 303), and the Third Circuit affirmed. *See United States v. Woods*, 415 F. App'x 371 (3d Cir. 2010). Among other reasons for denying the motion, it was noted that Woods admitted guilt to all elements of the offense. (Doc. 303.) Accordingly, Woods' claim that he was not informed of the elements of the offense is without merit, and his third ineffective assistance argument does not warrant relief.

### 4. The Defective Colloquy and Counsel's Failure to Investigate

Woods' fourth claim is that counsel was ineffective "for not objecting to the defective colloquy" and for "failure on the part of counsel to investigate." With respect to Woods' claim regarding the defectiveness of the colloquy, for the reasons discussed above, the colloquy has previously been found adequate by both this Court and the Third Circuit. Thus, Woods was not deprived of the effective assistance of counsel when no objections were raised during the plea colloquy.

As to the failure to investigate claim, Woods seemingly contends that his counsel provided deficient representation because he failed to interview Dominic Wilkins. In denying Woods' motion to withdraw his guilty plea, the Court noted that his counsel testified that he informed Woods that Mr. Wilkins' testimony would be of no great benefit because he was an alleged co-conspirator in the charged offenses. (Doc. 303.) Moreover, Woods'

conclusory contention that his counsel failed to investigate his case is rebutted by his former's counsel's testimony during the hearing on Woods' motion to withdraw his plea. At that hearing, Paul Ackourey testified that the "government was forthcoming in discovery" and he was provided the "equivalent of a banker's box full of documents together with C.D.s of wire intercepts and photographs." (Doc. 322, 48.) Mr. Ackourey also stated that he reviewed the discovery with Woods, that he researched potential suppression issues with respect to the wiretaps, and he determined that there was no reasonable basis for suppression. (*Id*. at 49-55.) Based on the foregoing, counsel did not provide ineffective assistance in the investigation of the case as suggested by Woods.

### 5. Additional Issues Asserted in the § 2255 Motion

Lastly, with respect to the issues raised in Woods' motion that differ slightly from the arguments advanced in detail in his brief, none warrant granting the requested relief. Specifically, in Ground Three, Woods asserts "poor performance on the part of counsel caused visible prejudice to Petitioner," which "openly meets cause-and-prejudice standard requirement for evidentiary hearing." (Doc. 367.) Ground Three does not justify habeas relief or require an evidentiary hearing be held because the Third Circuit has "repeatedly emphasized that 'bald assertions do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citing *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991)); *see also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("we have previously held that vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."). Likewise, his claim in Ground Four that his first counsel abandoned him and "abandonment was a fact for over 18 months during crucial portion of defense" is vague, conclusory and subject to disposition without further inquiry. Accordingly, these allegations fail to justify

granting the requested relief.

## IV. Conclusion

For the above stated reasons, Woods' motion will be denied.[5] And, because Woods has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will be issued.

An appropriate order follows.


March 27, 2013                                      /s/ A. Richard Caputo
Date                                                A. Richard Caputo
                                                    United States District Judge

---

[5]     Since the motion, files, and records conclusively demonstrate that Woods is not entitled to relief, the motion will be denied without an evidentiary hearing.